IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

|  |  |
|---|---|
| JUAN M. TIDWELL, SR.,<br><br>Petitioner,<br><br>vs.<br><br>MARION SPEARMAN, Warden,<br>Correctional Training Facility,[1]<br><br>Respondent. | No. 2:11-cv-00489-JKS<br><br>MEMORANDUM DECISION |

Juan M. Tidwell, Sr., a state prisoner proceeding *pro se*, filed a Petition for a Writ of Habeas Corpus with this Court pursuant to 28 U.S.C. § 2254. Tidwell is in the custody of the California Department of Corrections and Rehabilitation and incarcerated at the Correctional Training Facility in Soledad, California. Respondent has answered, and Tidwell has replied.

## I. BACKGROUND/PRIOR PROCEEDINGS

On February 2, 2006, Tidwell was charged with committing nine crimes against the same victim on or about September 10, 2005: kidnapping with the intent to commit rape or robbery (count 1); sexual battery while the victim was unlawfully restrained (count 2); forcible digital penetration (count 3); forcible rape (counts 4, 5, 6, 7, and 8); and robbery (count 9). The information also alleged as to all counts that Tidwell personally used a knife and as to counts 3 through 8 that Tidwell kidnapped the victim and committed the crime during the commission of kidnapping. It further alleged that Tidwell had five prior serious felony convictions and strikes.

---

[1]      Marion Spearman, Warden, Correctional Training Facility, is substituted for William Knipp, former Warden, Mule Creek State Prison. FED. R. CIV. P. 25(c).

Upon direct appeal of his conviction, the California Court of Appeal summarized the following

facts underlying the charges against Tidwell:

> The victim, R.C., a deaf woman with a learning disability, was 21 years old when the attack took place on September 10, 2005. She communicates by sign language, reading lips, writing notes, and text messaging. She lived in the vicinity of the College Greens light rail station in Sacramento and worked the night shift at Wal-Mart.
>
> On September 10, 2005, R.C. left her apartment at 9:30 p.m. to go to work, walking toward the light rail station. As she was walking, [Tidwell] approached her and asked if he could use her cell phone. R.C. let him use the phone and, after he was finished, he gave it back. R.C. continued on her way toward the light rail station, and defendant accompanied her. They communicated by writing notes in a notebook.
>
> [Tidwell] asked R.C. to go out with him, but she said she could not. She told him that she already had a boyfriend and that she worked at Wal-Mart and was going to the light rail station on her way to work. [Tidwell] offered to give R.C. a ride to work, but she declined. He also offered to pay her to spend some time with him, which she also declined.
>
> R.C. walked across the street to the light rail station, thinking she was leaving [Tidwell] behind. As she went to purchase her ticket for the train, however, [Tidwell] walked up behind her and tapped her on the shoulder. He wrote her a note telling her he had a gun and directing her to come with him. He wrote that he wanted money, and she responded that she could not give him any. [Tidwell] persisted in telling her to give him her money.
>
> [Tidwell] took R.C. to a dark area of a parking lot by the light rail station. R.C. saw that [Tidwell] had a knife in his hand. Only the blade was visible. She described it as a stabbing knife with a sharp point. [Tidwell] asked R.C. for $200. She had just $20, which she gave to him. Using written notes, [Tidwell] directed R.C. to pull up her shirt, "then I will leave." R.C. pulled up her shirt. He then had her pull down her pants and bend over towards the ground, which she did. She wrote to [Tidwell] asking if she could catch her train because she had shown [Tidwell] what he wanted to see. He replied that he had not seen it. He wrote to her to do it again, "then you can leave." [Tidwell] put his jacket on the ground and told R.C. to lie down on it. He touched her vagina, putting his finger inside, and kissed her breasts. [Tidwell] had R.C. get on her knees. He put on a condom and raped R.C., inserting his penis into her vagina several times.
>
> When [Tidwell] was finished, he allowed R.C. to put her clothing back on. They walked over to the light rail station, but there were no more trains coming because it was midnight. [Tidwell] was trying to act nicely. He asked R.C. if she wanted to go out for dinner. She responded that she had already eaten. [Tidwell] offered to take her home or to work. She accepted a ride to work because she did not want him to know where she lived.
>
> [Tidwell] drove R.C. to the Wal-Mart where she worked. R.C. went into Wal-Mart, and [Tidwell] drove away. Upset and shaking, she immediately reported that she had been raped. She was taken to a hospital, where a rape examination was performed.

Fissures were found in R.C.'s vagina, consistent with rape.  Later, she met with police officers and turned over the notes that had been exchanged between her and [Tidwell].

[Tidwell] was arrested one month after the rape.  He claimed he did not recall having sex with a deaf woman and did not recognize her picture.  He denied owning a jacket.

The parties stipulated that [Tidwell's] DNA was found on the inside crotch area of R.C.'s underwear and on her breast.  [Tidwell's] fingerprints were on the notebook pages that R.C. gave to officers and that his handwriting was on some of those pages.

At trial, the defense was that R.C. consented to the sex acts [Tidwell] committed on her.  There was evidence that [Tidwell] was flirting with R.C. during their interactions before R.C. reached the light rail station.  R.C. never told [Tidwell] she did not want to have sex, and during his acts, when he wrote the question, "Do you like it yes or no," she circled yes.  She accepted a ride to work from [Tidwell] and did not get out of [Tidwell's] car immediately upon arriving in the Wal-Mart parking lot.  Before getting out of the car, she agreed with [Tidwell] that she would call or text him.

*People v. Tidwell*, 78 Cal. Rptr. 3d 474, 476-77 (Cal. Ct. App. 2008).

After trial, a jury found Tidwell guilty of counts one through five and count nine and found true all of the personal use and kidnapping allegations as to those counts.  The jury acquitted Tidwell of three counts of rape—counts six, seven, and eight.  Tidwell waived the right to a jury trial on the prior conviction allegations, which had been bifurcated from the trial on the substantive crimes.

The trial court subsequently found true all of the prior conviction allegations.  The court then sentenced Tidwell under the three strikes law (CAL. PENAL CODE § 1170.12) as follows: 25 years to life, tripled to 75 years to life, for count three; three consecutive terms of 25 years to life for counts four, five, and nine; a consecutive term of 1 year for the use allegation in count nine; and a concurrent term of 25 years to life for count two.  The trial court stayed the sentence for count one and its use allegation.  The total aggregate state prison term imposed was therefore an indeterminate term of 150 years to life and a determinate term of 1 year.

Through counsel, Tidwell appealed his conviction, arguing that: 1) the trial court erred in refusing to permit Tidwell to question the victim about previous rape allegations; 2) the admission of evidence of Tidwell's prior sexual offenses was prejudicial error; 3) the trial court erred in admitting a knife seized from Tidwell's residence that was not used in the offenses; 4) trial counsel was ineffective for failing to object to portions of Tidwell's statement to police; 5) the trial court erroneously instructed the jury on the prosecution's burden of proof because the instruction prohibited the jurors from considering a lack of evidence; 6) the existence of cumulative error warranted reversal of his convictions; 7) the jury findings that Tidwell committed the crimes charged in counts three through five during the commission of kidnapping should be stricken; 8) the abstract of judgment and sentencing minute order must be corrected to show the correct enhancement provision attached to counts one and nine; and 9) the use of juvenile adjudications as strikes under the three strikes law violates due process and the right to trial by jury.  The Court of Appeal modified the judgment of conviction to strike the jury's true findings of an enhancement in counts three through five and amended the sentencing minute order to reflect the correct enhancement provision attached to counts one and nine but affirmed the judgment in all other respects in a reasoned, partially-published opinion issued on June 17, 2008.  *Tidwell*, 78 Cal. Rptr. 3d at 483.  Tidwell subsequently raised the unsuccessful claims in a counseled petitioned for review to the California Supreme Court, which was denied on October 1, 2008.

On April 20, 2009, Tidwell, proceeding *pro se*, filed a petition for a writ of habeas corpus in the Sacramento County Superior Court, alleging: 1) trial counsel was ineffective in failing to impeach the victim with prior inconsistent statements she allegedly made to a defense

investigator that she was never afraid of Tidwell; 2) trial counsel was ineffective in failing to move to exclude the handwritten notes of the victim and Tidwell; 3) his due process rights were violated by the omission of pages 329 through 339 of the trial transcript, and appellate counsel was ineffective for failing to investigate the omission; 4) appellate counsel was ineffective in failing to investigate Tidwell's claim that police had tampered with DNA evidence by removing it from a used condom and swabbing it into the victim's underwear; and 5) his due process rights were violated by the lack of a reporter's transcript of the April 28, 2006, hearing in which the court assigned his trial counsel of record.  The court denied the petition in a reasoned, unpublished opinion.

Tidwell then filed a *pro se* petition for a writ of habeas corpus in the California Court of Appeal, raising the same claims he unsuccessfully raised in his habeas petition to the Superior Court.  The Court of Appeal summarily denied his petition on October 1, 2009.

In a *pro se* habeas petition filed in the California Supreme Court, Tidwell again raised his previous habeas claims and also alleged that trial counsel was ineffective for stipulating to the prosecution's DNA evidence and failing to hire a DNA expert on Tidwell's behalf.  The California Supreme Court denied the petition without comment on June 9, 2010.

Tidwell then filed another *pro se* petition for a writ of habeas corpus in the Superior Court, alleging that he was denied his right to confrontation by his trial counsel's stipulation, over his objection, to the DNA evidence.  The Superior Court denied the petition on both procedural grounds and the merits in a reasoned, unpublished decision issued on April 20, 2011.

Tidwell subsequently filed an additional *pro se* habeas petition in the Court of Appeal, again arguing that his confrontation rights were violated by his trial counsel's stipulation to the DNA evidence.  The Court of Appeal summarily denied the petition on May 12, 2011.

Tidwell raised that same claim in a third *pro se* habeas petition filed in the Superior Court.  The Superior Court denied the claim on December 23, 2011, as already raised and rejected and untimely.

Tidwell additionally raised the confrontation claim in a third *pro se* habeas petition to the Court of Appeal, which was summarily denied on February 2, 2012.  Finally, Tidwell raised the confrontation claim in a second *pro se* habeas petition to the Supreme Court, which was denied without comment on May 23, 2012.

While he was still pursuing habeas relief in the state courts, Tidwell filed a *pro se* Petition for a Writ of Habeas Corpus to this Court on February 2, 2011.  He subsequently filed an Amended Petition.  Respondent moved to dismiss the Amended Petition as untimely.  Docket No. 18.  This Court, through a previously-assigned judge, denied the motion after concluding that Tidwell's transfer to a prison facility, which resulted in a delay in his receiving his legal property, entitled Tidwell to equitable tolling of the deadline to file his petition and directed Respondent to answer Tidwell's Amended Petition.

## II. GROUNDS/CLAIMS

In his *pro se* Amended Petition, Tidwell raises five grounds for relief.  First, he argues that the trial court violated his right to confrontation when it refused to allow him to question the witness about prior rape allegations and violated due process when it admitted evidence of his prior sexual offenses.  He next argues that the use of his juvenile adjudications as prior strikes

violated his right to a fair trial.  Third, he contends that trial counsel was ineffective for stipulating to the admission of DNA evidence.  He similarly asserts in claim 4 that trial counsel was ineffective for failing to: a) impeach the victim with her prior statement that she was not afraid of Tidwell; b) object for lack of foundation to the admission of the handwritten notes; and c) investigate DNA evidence.  Finally, he argues that appellate counsel was ineffective for failing to investigate: a) his claim that a portion of the trial transcript was missing; and b) DNA evidence tampering.

## III.  STANDARD OF REVIEW

Under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), 28 U.S.C. § 2254(d), this Court cannot grant relief unless the decision of the state court was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," § 2254(d)(1), or "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding," § 2254(d)(2).  A state-court decision is contrary to federal law if the state court applies a rule that contradicts controlling Supreme Court authority or "if the state court confronts a set of facts that are materially indistinguishable from a decision" of the Supreme Court, but nevertheless arrives at a different result.  *Williams v. Taylor*, 529 U.S. 362, 406 (2000).

The Supreme Court has explained that "clearly established Federal law" in § 2254(d)(1) "refers to the holdings, as opposed to the dicta, of [the Supreme Court] as of the time of the relevant state-court decision."  *Id.* at 412.  The holding must also be intended to be binding upon the states; that is, the decision must be based upon constitutional grounds, not on the supervisory power of the Supreme Court over federal courts.  *Early v. Packer*, 537 U.S. 3, 10 (2002).  Where

holdings of the Supreme Court regarding the issue presented on habeas review are lacking, "it cannot be said that the state court 'unreasonabl[y] appli[ed] clearly established Federal law.'" *Carey v. Musladin*, 549 U.S. 70, 77 (2006) (citation omitted).

To the extent that the Petition raises issues of the proper application of state law, they are beyond the purview of this Court in a federal habeas proceeding. *See Swarthout v. Cooke*, 131 S. Ct. 859, 863 (2011) (per curiam) (holding that it is of no federal concern whether state law was correctly applied). It is a fundamental precept of dual federalism that the states possess primary authority for defining and enforcing the criminal law. *See, e.g.*, *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991) (a federal habeas court cannot reexamine a state court's interpretation and application of state law); *Walton v. Arizona,* 497 U.S. 639, 653 (1990) (presuming that the state court knew and correctly applied state law), *overruled on other grounds by Ring v. Arizona*, 536 U.S. 584 (2002).

In applying these standards on habeas review, this Court reviews the "last reasoned decision" by the state court. *See Robinson v. Ignacio,* 360 F.3d 1044, 1055 (9th Cir. 2004) (citing *Avila v. Galaza*, 297 F.3d 911, 918 (9th Cir. 2002)). Under the AEDPA, the state court's findings of fact are presumed to be correct unless the petitioner rebuts this presumption by clear and convincing evidence. 28 U.S.C. § 2254(e)(1); *Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003).

# IV. DISCUSSION

A.      Evidentiary Rulings (Claim 1)

Tidwell first challenges his conviction by asserting that the trial court made two reversible evidentiary errors.

1.      Prior Rape Allegations

Tidwell contends that the trial court denied him due process and a fair trial when it refused to allow Tidwell to question the victim outside of the jury's presence to determine whether she had previously made statements concerning false rape allegations.  Tidwell asserts that the prior statements should have been admitted to impeach the victim "because they demonstrate a character trait for dishonesty and for making false statements concerning sexual conduct."  In considering this claim on direct appeal of his conviction, the California Court of Appeal recounted the following facts:

> A. *Background*
> Before trial, [Tidwell] filed a "Motion in Limine to Admit Evidence Pursuant to Evidence Code § 782."  In connection with the motion, he made an offer of proof, detailed below, that R.C. had made prior false complaints of rape and sought a ruling from the court allowing him to introduce evidence of the prior complaints during the trial.
> The offer of proof related to two incidents in which R.C. stated she had been raped: one on February 3, 2000, and the other on September 20, 2000.
>
> 1. February 3, 2000, Rape Complaint
> According to [Tidwell's] offer of proof, R.C. told a police officer that she was blindfolded and kidnapped from in front of her apartment complex after school.  The person, whom she did not know, tied her hands behind her back and transported her somewhere by car.  He stopped the car, took her out of the car, and raped her.  She told the officer that she was not sexually active.  The person took her back to her apartment complex and left her there.  She did not know the location of the rape.  Although she did not tell her mother or brother what happened, she told two friends at school the next day, after which a police officer took her statement.
> During a sexual assault exam on February 4, R.C. told the medical personnel that no force was used but that her vagina hurt.  Although there was some vaginal discharge,

there were no acute injuries.  There was evidence of healed hymenal trauma, indicating prior penetration.

A few weeks after the February 3 incident, a police officer took a statement from Sonia Mejia, a friend of R.C.'s.  She stated that she talked to R.C. on the day after the incident.  R.C. told her that R.C. had gone to her boyfriend's house.  Her boyfriend was not there, but one of his friends, a 20-year-old, "touched" her.  Mejia did not believe it was a stranger who attacked R.C.

2. September 20, 2000, Rape Complaint

On September 20, 2000, R.C. was a student at the California School for the Deaf in Fremont.  She went to a grocery store with other students and, while there, saw Mark Crawford, whom she had met at school.  She went for a drive with Crawford and went with him into a public restroom at a park where he forced her to have sex with him.

A counselor questioned R.C. about leaving the store with Crawford.  R.C. admitted she had gone for a drive with Crawford but denied that anything occurred between them.  Months later, however, after the counselor received information that Crawford may have raped R.C., she asked R.C. about it.  At that point, R.C. told the counselor that Crawford had raped her in the restroom.

R.C. told a police officer that Crawford pulled her from the store, took her forcibly by car, and raped her in the public restroom.  She stated that she reported the rape to two counselors at the school and obtained an abortion pill from the nurse on campus.  A social worker reported to an officer that she checked the records of the school's health center and determined that R.C. had come in because of vomiting that day but not because of a rape complaint.

Several months later, R.C. told an officer that she voluntarily walked to Crawford's car.  When she hesitated, Crawford demanded that she get in.  Although she was scared, she got in the car.  She told the officer that Crawford later pulled her out of the car, pulled and pushed her towards the restroom at the park, and assaulted her.

Crawford was arrested, but he claimed that the encounter with R.C. was consensual.  He was not prosecuted.

3. Exclusion of Evidence

After reviewing [Tidwell's] motion, the trial court stated its understanding that, because R.C. never recanted her prior rape complaints, the only way [Tidwell] could establish the falsity of the complaints would be to have the men she accused testify.  Defense counsel agreed but noted that there were problems with that approach because R.C. was unable to identify an attacker for the February 2000 incident and Crawford, the person involved in the September 2000 incident, might be difficult to find.  The trial court agreed to schedule a hearing out of the presence of the jury for the defense to present evidence in an attempt to establish the falsity of R.C.'s prior rape complaints.

At the hearing out of the presence of the jury, the defense, which had found Crawford, secured his presence in court to testify.  But Crawford asserted his right to remain silent, making him unavailable as a witness.  After the court and counsel discussed other alternatives for introducing evidence of R.C.'s prior rape complaints,

10

including through counselors, police officers, and others, [Tidwell] moved for permission
to introduce that type of evidence.  The trial court ruled the evidence inadmissible
pursuant to Evidence Code section 352 (hereafter, section 352).  In making this ruling,
the court commented on (1) the weakness of the evidence supporting a conclusion that
the rape complaints were false and (2) the prosecution's intention to call a witness who
would testify that Crawford raped her around the same time that the incident took place
with R.C.

*Tidwell*, 78 Cal. Rptr. 3d at 478-79.

The Confrontation Clause of the Sixth Amendment provides that "[i]n all criminal

prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against

him . . . ."  U.S. CONST. amend. VI.  It is well settled that, under the Sixth Amendment, an

accused has the right to present witnesses, testimony and other evidence in his defense.  *See*

*Washington v. Texas*, 388 U.S. 14, 19 (1967).  However, "[t]he accused does not have an

unfettered right to offer testimony that is incompetent, privileged, or otherwise inadmissible

under standard rules of evidence."  *Taylor v. Illinois*, 484 U.S. 400, 409-10 (1988).  States have

considerable latitude under the Constitution to establish rules excluding evidence from criminal

trials.  *Holmes v. S. Carolina*, 547 U.S. 319, 324 (2006).  "Thus, a trial judge may exclude or

limit evidence to prevent excessive consumption of time, undue prejudice, confusion of the

issues, or misleading the jury.  The trial judge enjoys broad latitude in this regard, so long as the

rulings are not arbitrary or disproportionate."  *Menendez v. Terhune*, 422 F.3d 1012, 1033 (9th

Cir. 2005) (citations omitted); *see Montana v. Egelhoff*, 518 U.S. 37, 42-43 (1996) (holding due

process rights are not violated by exclusion of relevant evidence where probative value is

outweighed by danger of prejudice or confusion).

Federal Rule of Evidence 403, the federal counterpart to California Evidence Code

section 352, permits the exclusion of evidence if its probative value is "substantially outweighed

by a danger of . . . unfair prejudice, confusing the issues, misleading the jury, undue delay,

wasting time, or needlessly presenting cumulative evidence."  "A district court is accorded a

wide discretion in determining the admissibility of evidence under the Federal Rules.  Assessing

the probative value of [the proffered evidence], and weighing any factors counseling against

admissibility is a matter first for the district court's sound judgment under Rules 401 and

403 . . . ."  *United States v. Abel,* 469 U.S. 45, 54 (1984); *see Boyd v. City and Cnty. of San*

*Francisco*, 576 F.3d 938, 948 (9th Cir. 2009).  California employs a similar rule.  *See People v.*

*Harris*, 118 P.3d 545, 565 (Cal. 2005) ("We review for abuse of discretion a trial court's rulings

on the admissibility of evidence.").

In *Wood v. Alaska*, 957 F.2d 1544, 1549-50 (9th Cir. 1992), the Ninth Circuit laid out a

two-part inquiry to determine whether a petitioner's Sixth Amendment rights are violated by

restricted cross-examination.  The first inquiry is whether the evidence is relevant.  *See id*. at

1550.  If the evidence is relevant, the next inquiry is whether other legitimate interests outweigh

the defendant's interest in presenting the evidence.  *See id*.  In *Wood*, the Ninth Circuit explained

that there will not be a Sixth Amendment violation "so long as the jury has 'sufficient

information' upon which to assess the credibility of a witness."  *Id*. (citation omitted).

Under these guidelines, this Court cannot find that the trial court's restriction on the

proposed cross-examination was either unreasonable or contrary to federal law.  As the appellate

court concluded in rejecting the claim on direct appeal:

> Although there was some evidence that R.C. made inconsistent statements, there
> was no conclusive evidence that her prior rape complaints were false.  The defense was
> unable to obtain evidence from the men that R.C. accused, and inferences could be drawn
> either way from the circumstances of the prior incidents and R.C.'s statements
> concerning the incidents.  In addition to the weaknesses in the evidence concerning
> falsity of the rape complaints, admitting the evidence would have resulted in an undue

consumption of time as the defense attempted to bolster its view and the prosecution introduced evidence that Crawford had raped another female student.  We therefore cannot say that the trial court abused its discretion in excluding the evidence based on the weak nature of the evidence of falsity of the complaints and the confusion of the jury and consumption of time it would have engendered for the parties to embark on the task of litigating the truthfulness of R.C.'s prior complaints.

*Tidwell*, 78 Cal. Rptr. 3d at 482-83.

The Supreme Court's decision in *Davis v. Alaska*, 415 U.S. 308 (1974), does not compel a different conclusion.  In *Davis*, the petitioner had been convicted of grand larceny and burglary following a trial in which the trial judge prevented defense counsel from cross-examining a key witness concerning his adjudication as a juvenile delinquent relating to a burglary and his probation status at the time of the events.  *Davis*, 415 U.S. at 309-11.  Defense counsel sought to introduce the witness's juvenile record on cross-examination not as a general impeachment of the witness's character but rather to show bias and prejudice against the defendant because the witness, who was then on probation, might have identified the defendant out of fear or concern that the police might believe he had committed the crime in issue, thereby jeopardizing his probation.  *Davis*, 415 U.S. at 311.  Following the affirmance of petitioner's convictions by the Alaska Supreme Court, the United States Supreme Court reversed and remanded, holding that the jurors were entitled to have the benefit of the defense theory before them so that they could make an informed judgment as to the weight to place on the witness's testimony.  *Id.* at 317.  In particular, the court ruled that counsel should have been permitted to ask the witness not only "whether he was biased," but also "why [he] might have been biased or otherwise lacked that degree of impartiality expected of a witness at trial."  *Id.* at 318.  The *Davis* Court emphasized that "the exposure of a witness' motivation in testifying is a proper and important function of the constitutionally protected right of cross-examination."  *Id.* at 316-17.

13

The proffered evidence here, however, does not share the probative value of the evidence at issue in *Davis*. The absence of a formal charge in either case had no tendency in reason to disprove the victim's prior accusations. *See People v. Bittaker*, 774 P.2d 669 (Cal. 1989) ("The value of the evidence as impeachment depends upon proof that the prior charges were false."). Tidwell's contention that the victim's prior rape allegations were false was pure speculation. Moreover, the proffered evidence, unlike the evidence at issue in *Davis*, intrudes on the privacy rights of the victim which the California legislature has sought to protect through the enactment of the state's Rape Shield Law. Therefore the proper question in this case is whether it was "objectively unreasonable" for the California Court of Appeal to conclude that the trial court struck a proper balance between the privacy of the victim and Tidwell's Sixth Amendment right to examine the victim's motivation for her testimony.

This Court cannot say that the decision was "objectively unreasonable." The inference (if any) that the victim fabricated her charge against Tidwell was weak. Undoubtedly, as recognized by both the trial and appellate courts, the matter would devolve into a mini-trial involving the victim, counselors, medical experts, and police officers. The state courts properly concluded under Evidence Code § 352 that the probative value of Tidwell's proposed evidence was substantially outweighed by the probability that it would occasion undue consumption of time and create a substantial danger of confusing the issues and of misleading the jury. Accordingly, § 2254(d) of the AEDPA precludes this Court from granting habeas relief on this claim.

    2.      Prior Sexual Offenses

Tidwell additionally contends that the trial court committed prejudicial error when it admitted evidence of a prior sexual offense that occurred in 1998. He asserts that the prior offenses "were more inflammatory" than the evidence of the pending charged crimes, and "[t]here was also a potential for juror confusion and misuse of evidence" based on the prior offenses. In considering this claim on direct appeal, the California Court of Appeal laid out the following underlying facts:

> Late at night on June 24, 1998, L.H. was sitting in a car at a park with her boyfriend. [Tidwell] and another, heavier man approached the car and, brandishing a gun, ordered the couple out of the car and into the park. The two men asked for the couple's valuables and were given a wallet, a gold chain, and a several dollars [sic]. The heavier man told the couple to take off their clothing so the couple would not follow the two men.
>
> After L.H. took off her sweater, [Tidwell] began making comments about her appearance. He grabbed her by the arm and led her to a different part of the park. There, he told her to take off her clothing. She pleaded with him not to make her do it, but eventually took off most of her clothing when [Tidwell] threatened to have the heavier man shoot her boyfriend. [Tidwell] told her he wanted to feel himself inside of her. When dogs began barking from a nearby yard, however, the heavier man yelled at [Tidwell]. While [Tidwell] went to respond to the heavier man, L.H. put.some of her clothing back on. She did not attempt to escape, however, because she feared the men would kill her boyfriend.
>
> The men dropped the boyfriend's wallet and could not find it, so the heavier man told [Tidwell] to go to their bicycles and get a flashlight. [Tidwell] went but returned upset because the bicycles had been taken. He hit the boyfriend in the face and, using profane language as he had throughout the incident, told the heavier man that they would have been gone already if the heavier man had allowed him to rape L.H. [Tidwell] kneed L.H. in the back, knocking her to the ground. He elbowed her in the face to keep her on the ground and put his hand under her sweater and grabbed her breasts. The heavier man, after several attempts, pulled [Tidwell] off of L.H.
>
> As the men were leading L.H. and her boyfriend back toward the car, L.H. stepped on the wallet the men had been looking for. The heavier man took it and said they were going to an ATM so that the boyfriend could withdraw money for them. [Tidwell] yanked L.H. by the hair and told her he was going to break her neck. As the group approached the car, a police vehicle arrived. [Tidwell] was apprehended, and L.H. identified him as her assailant.
>
> Before trial in the current case, the prosecution moved to admit the evidence of the June 1998 incident, and the defense moved to exclude the evidence. At a hearing on the motions, the trial court determined that the evidence was admissible pursuant to

> [California Evidence Code] section 1108.  The court also determined that the consumption of time, potential for confusion, and prejudicial effect of the evidence did not significantly outweigh its probative value and therefore allowed the prosecution to introduce it.
>
> The parties stipulated that, in November 1998, [Tidwell] "was convicted after trial of committing an assault with intent to commit rape . . . ."

LD 2 at 21-22.

California Evidence Code § 1108 allows the prosecution to prove a defendant's propensity to commit sex crimes by offering evidence that he has committed other sex crimes.  It is an exception to the general rule, reflected in § 1101, that propensity evidence is not admissible.  *See* CAL. EVID. CODE §§ 1101(a), 1108(a).  The relevant portion of § 1108 provides: "In a criminal action in which the defendant is accused of a sexual offense, evidence of the defendant's commission of another sexual offense or offenses is not made inadmissible by Section 1101, if the evidence is not inadmissible pursuant to Section 352."  As noted above, § 352, which is incorporated into § 1108, allows for the exclusion of otherwise probative evidence if it will consume unnecessary time, create the danger of undue prejudice, confuse the issues, or mislead the jury.  CAL. EVID. CODE § 352.  Section 1108 is analogous to Federal Rule of Evidence 413, which provides that, "[i]n a criminal case in which a defendant is accused of a sexual assault, the court may admit evidence that the defendant committed any other sexual assault."  FED. R. EVID. 413(a).  And, similarly, as noted above, § 352 is the equivalent of Federal Rule of Evidence 403.

Tidwell argues that the trial court erred in two respects: 1) the admission of the prior conviction created "a potential for juror confusion and misuse of evidence"; and 2) "robbery and kidnapping are not 'sex offenses' that permit an inference of propensity to commit sex crime under Evidence Code section 1108."

16

As an initial matter, Tidwell cannot prevail on this claim because "[i]ncorrect state court evidentiary rulings cannot serve as a basis for habeas relief unless federal constitutional rights are affected." *Lincoln v. Sunn*, 807 F.2d 805, 816 (9th Cir. 1987). So, even if the trial court erred in its application of §§ 352 and 1108, such error is not a ground for federal habeas relief. *See Estelle*, 502 U.S. at 67-68. Indeed, Tidwell cannot demonstrate that the trial court committed error. The record reflects that the trial court properly weighed the evidence against its potential to cause prejudice and instructed the jury that it may, but was not required, to infer from the evidence that he had a disposition to commit sexual offenses. Likewise, Tidwell was convicted of assault with the intent to rape in violation of California Penal Code § 220. The Evidence Code expressly defines "sexual offense" as a crime involving "any conduct proscribed by Section 220 of the Penal Code," CAL. EVID. CODE § 1108(d)(1)(B), and thus his prior conviction constituted a sexual offense under § 1108.

Moreover, the Ninth Circuit has repeatedly barred federal habeas petitioners from challenging the constitutionality of prior sexual misconduct evidence admitted to show propensity pursuant to California Evidence Code § 1108. *See, e.g., Greel v. Martel*, 472 F. App'x 503, 504 (9th Cir. 2012) ("Ninth Circuit precedent 'squarely forecloses [the] argument' that admission of evidence of sexual misconduct to show propensity violates due process.") (quoting *Mejia v. Garcia*, 534 F.3d 1036, 1046 (9th Cir. 2008)); *Sanches v. Hedgpeth*, 381 F. App'x 710, 711 (9th Cir. 2010) ("[T]he Supreme Court has never held that the admission of prior sexual misconduct to lend credence to a victim's claims to be unconstitutional."); *Mejia*, 534 F.3d at 1046 (on AEDPA review, upholding admission of evidence of prior uncharged sexual offenses in support of rape charges). In so holding, the Ninth Circuit has cited the United States

17

Supreme Court's express refusal to decide the issue. *See Estelle*, 502 U.S. at 75 n.5 ("Because we need not reach the issue, we express no opinion on whether a state law would violate the Due Process Clause if it permitted the use of 'prior crimes' evidence to show propensity to commit a charged crime."). Accordingly, Tidwell is not entitled to habeas relief on any argument advanced in support of claim 1.

B.      Use of Juvenile Adjudications as Strikes (Claim 2)

Tidwell next argues that the court's use of his juvenile adjudications as strikes for purposes of California's three strikes law violated his rights to due process and a trial by jury under *Apprendi v. New Jersey*, 530 U.S. 466 (2000), which established an adult criminal defendant's general right to a jury finding beyond reasonable doubt of any fact used to increase the sentence for a felony conviction beyond the maximum term permitted by conviction of the charged offense alone. The California Court of Appeal rejected this claim on direct appeal, citing state caselaw "hold[ing] that, because a juvenile, without a jury trial, can be reliably and constitutionally adjudicated as having committed acts that would be crimes if he were an adult, using that adjudication to increase a later adult sentence does not run afoul of the right to jury trial."

In support of his claim, Tidwell cites *United States v. Tighe*, 266 F.3d 1187 (9th Cir. 2001), in which the Ninth Circuit held that, under *Apprendi*, juvenile adjudications that do not afford the right to a jury trial and a beyond-a-reasonable-doubt burden of proof cannot be used to increase a defendant's sentence. *Tighe*, 266 F.3d at 1194. However, in *Boyd v. Newland*, 467 F.3d 1139 (9th Cir. 2006), the Ninth Circuit acknowledged that *Tighe* is in conflict with the decisions of the California appellate courts and other federal circuits, and, importantly, clarified

18

that its decision in *Tighe* "does not represent clearly established federal law" for the purposes of the AEDPA.  467 F.3d at 1152.  Accordingly, a state court's use of a habeas petitioner's juvenile adjudication as a sentencing enhancement is not contrary to, nor an unreasonable application of, Supreme Court precedent.  *Id.*; *see also John-Charles v. California*, 646 F.3d 1243, 1252 (9th Cir. 2011) (concluding that the use of a juvenile adjudication as a strike neither contravened nor unreasonably applied clearly established Supreme Court precedent).  Tidwell therefore cannot prevail on this claim.

C.      Ineffective Assistance of Counsel

        Finally, Tidwell asserts that both trial and appellate counsel rendered ineffective assistance for a variety of reasons.

        1.      *Strickland* Standard on Habeas Review

        To demonstrate ineffective assistance of counsel under *Strickland v. Washington*, a defendant must show both that his counsel's performance was deficient and that the deficient performance prejudiced his defense.  466 U.S. 668, 687 (1984).  A deficient performance is one in which "counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed by the Sixth Amendment."  *Id.*

        The Supreme Court has explained that, if there is a reasonable probability that the outcome might have been different as a result of a legal error, the defendant has established prejudice and is entitled to relief.  *Lafler v. Cooper*, 132 S. Ct. 1376, 1385-86 (2012); *Glover v. United States*, 531 U.S. 198, 203-04 (2001); *Williams*, 529 U.S. at 393-95.  Where a habeas petition governed by AEDPA alleges ineffective assistance of counsel, the *Strickland* prejudice standard is applied and federal courts do not engage in a separate analysis applying the *Brecht v.*

*Abrahamson*, 507 U.S. 619, 623 (1993),[2] standard. *Avila v. Galaza*, 297 F.3d 911, 918, n.7 (9th Cir. 2002); see *also Musalin v. Lamarque*, 555 F.3d 830, 834 (9th Cir. 2009). Under this rubric, in reviewing ineffective assistance of counsel claims in a federal habeas proceeding:

> The question "is not whether a federal court believes the state court's determination" under the *Strickland* standard "was incorrect but whether that determination was unreasonable—a substantially higher threshold." And, because the *Strickland* standard is a general standard, a state court has even more latitude to reasonably determine that a defendant has not satisfied that standard.

*Knowles v. Mirzayance*, 556 U.S. 111, 123 (2009) (citations omitted); *see also Runningeagle v. Ryan*, 686 F.3d 758, 775 (9th Cir. 2012).

Thus, Tidwell must show that defense counsel's representation was not within the range of competence demanded of attorneys in criminal cases, and there is a reasonable probability that, but for counsel's ineffectiveness, the result would have been different. *See Hill v. Lockhart*, 474 U.S. 52, 57 (1985). An ineffective assistance of counsel claim should be denied if the petitioner fails to make a sufficient showing under either of the *Strickland* prongs. *See Strickland*, 466 U.S. at 697 (courts may consider either prong of the test first and need not address both prongs if the defendant fails on one).

    2.        Trial Counsel (Claims 3, 4)

        a.      *Stipulation to DNA evidence*

---

[2] Where the *Brecht* standard of prejudice applies, federal courts apply *Brecht* "'without regard for the state court's harmlessness determination.'" *Deck v. Jenkins*, 768 F.3d 1015, 1022 (9th Cir. 2014)(quoting *Pulido v. Chrones*, 629 F.3d 1007, 1012 (9th Cir. 2010)). The *Deck* court explained that "AEDPA deference to the [state court's] harmlessness determination is already subsumed within the *Brecht* standard." *Id.* at 1024 (citing *Fry v. Pliler*, 551 U.S. 112, 120 (2007)).

Tidwell complains that his confrontation and due process rights were violated because his trial counsel stipulated to a "forensic analyst certificate" without his consent.

Initially, Tidwell's claim fails because it is procedurally barred from federal habeas review.  Federal courts "will not review a question of federal law decided by a state court if the decision of that court rests on a state law ground that is independent of the federal question and adequate to support the judgment." *Coleman v. Thompson*, 501 U.S. 722, 729 (1991).  This Court may not reach the merits of procedurally defaulted claims, that is, claims "in which the petitioner failed to follow applicable state procedural rules in raising the claims." *Sawyer v. Whitley*, 505 U.S. 333, 338 (1992).  "The state-law claim may be a substantive rule dispositive of the case, or a procedural barrier to adjudication of the claim on the merits." *Walker v. Martin*, 131 S. Ct. 1120, 1127 (2011).  Procedural default does not preclude federal habeas review unless the last state court rendering judgment in a case "clearly and expressly" states that its judgment rests on a state procedural bar. *Teague v. Lane*, 489 U.S. 288, 298-99 (1989) (quoting *Harris v. Reed*, 489 U.S. 255, 262-63 (1989)).  "In order to constitute adequate and independent grounds sufficient to support a finding of procedural default, a state rule must be clear, consistently applied, and well established at the time of the petitioner's purported default." *Morales v. Calderon*, 85 F.3d 1387, 1393 (9th Cir. 1996) (internal quotation marks and citation omitted).

In this case, Tidwell raised this claim in two of his habeas petitions filed in the Superior Court as well as a habeas petition filed in the Court of Appeal.  The Superior Court issued reasoned decisions rejecting this claim on procedural grounds, including a citation to *In re Dixon*, 264 P.2d 513, 514 (Cal. 1953).

A citation to *Dixon* indicates that the state court found claims to be barred because they could have been but were not raised on direct appeal. *See Dixon*, 264 P.2d at 514 ("The general rule is that habeas corpus cannot serve as a substitute for an appeal, and, in the absence of special circumstances constitu[t]ing an excuse for failure to employ that remedy, the writ will not lie where the claimed error could have been, but were not, raised upon a timely appeal from a judgment of conviction."); *see also Seaton*, 95 P.3d at 901 n.4 ("What we mean when we invoke the *Dixon* bar is that the claim is *based on the appellate record*, and thus was fully cognizable on appeal insofar as it was preserved at trial.).

The Ninth Circuit has not explicitly found that a *Dixon* default is an independent and adequate state law ground, but it has indicated that it is likely to do so with respect to the time period at issue here. *See Bennett v. Mueller*, 322 F.3d 573, 580-86 (9th Cir. 2003) (suggesting in dicta that *Dixon* rule would constitute an independent and adequate state-law ground when applied after the California Supreme Court's 1998 decision in *In re Robbins*, 959 P.2d 311 (Cal. 1998)); *see also Flores v. Roe*, 228 F. App'x 690, 691 (9th Cir. 2007) (finding claim procedurally barred based on *Dixon*); *cf. Park v. California*, 202 F.3d 1146, 1152-53 (9th Cir. 2000) (holding that *Dixon* bar was not independent state law ground prior to *Robbins*). Some courts in this district have accordingly concluded that habeas review is foreclosed when the petitioner has failed to place the adequacy of the *Dixon* rule at issue and has not shown cause and prejudice or that a miscarriage of justice would result if the claim were not heard. *See, e.g.*, *Stribling v. Grounds*, No. 12-cv-3084, 2013 WL 5817668, at *4-5 (E.D. Cal. Oct. 29, 2013); *Cantrell v. Evans*, No. 07-cv-1440, 2010 WL 1170063, at *13-14 (E.D. Cal. Mar. 24, 2010).

It is unnecessary, however, for this Court to decide the *Dixon* procedural bar issue here because the state court applied an additional procedural bar which is dispositive in this case.  The Superior Court also rejected the claim with a citation to *In re Robbins*, 959 P.2d 311 (Cal. 1998), and *In re Clark*, 855 P.2d 729 (Cal. 1993), which reflects that Tidwell's state habeas petition was denied because it was deemed untimely, *Walker*, 131 S. Ct. at 1126.  The Ninth Circuit has held that California's "substantial delay" timeliness standard satisfies the "independent and adequate" requirement.  *See Bennett*, 322 F.3d at 582-83; *see also Walker*, 131 S. Ct. at 1131 (finding that California's timeliness standard is adequate).  Accordingly, the Court agrees with Respondent that this claim is procedurally defaulted and barred from federal review and rejects the claim on that basis.

In any event, even if the claim were not procedurally barred, it is entirely without merit, and the Court alternatively rejects it on the merits.  As the state court recognized, a trial counsel's decision to enter into a stipulation concerning certain expert testimony involves a matter of trial strategy, and disagreement about trial tactics cannot form the basis for a claim of ineffective assistance of counsel.  *See Strickland*, 466 U.S. at 689 ("[T]he defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy." (citation and internal quotation marks omitted)); *People of Territory of Guam v. Santos*, 741 F.2d 1167, 1169 (9th Cir. 1984).

Moreover, trial counsel did not stipulate that Tidwell's DNA was found on the inside crotch area of the victim's underwear and breast without the benefit of any forensic examination whatsoever.  Counsel so stipulated only after the forensic results established this conclusion.  Although Tidwell asserts that the police tampered with the DNA evidence, *infra*, Tidwell has not

identified any flaw in the forensic examination or results that would have provided defense

counsel with a valid basis for objecting to and excluding testimony presenting the lab results.

The state court's conclusion that Tidwell could not demonstrate a reasonable probability of a

different outcome at trial had his counsel not stipulated to the DNA was not an objectively

unreasonable application of *Strickland*.  This claim is therefore both procedurally barred and

without merit.

> ### b.    *Failure to impeach victim*

Tidwell next complains that trial counsel failed to impeach the victim with a previous

statement she made to a defense investigator that she was not scared or afraid of Tidwell.  The

Superior Court rejected this claim on habeas review, concluding:

> The claim is meritless.  The investigator's report reflects that the victim told the
> investigator that [Tidwell] had displayed a knife and said he would kill her if she did not
> go with him.  If introduced at trial, the jury was not likely to have believed that the victim
> was in fact unafraid, and was likely to still have believed the victim's trial testimony that
> she was in fact was [sic] afraid.  Thus, it was a reasonable tactical choice of counsel not
> to attempt to impeach the victim with the statements she made to the defense investigator,
> as it could have supported the prosecution's case even further.  Nor does [Tidwell] show
> prejudice.  As such, the claim fails under *Strickland v. Washington* (1984) 466 U.S. 668.

Tidwell fails to demonstrate that the state court's denial of this claim is an unreasonable

application of *Strickland*.  It was not unreasonable for the state court to conclude that trial

counsel made a tactical decision not to impeach the victim with her prior statement because it

could have opened the door to the admission of other statements the victim made to the

investigator that were harmful to Tidwell.  The state court also reasonably concluded that

Tidwell failed to establish that he was prejudiced by the alleged error.  The record supports the

court's finding that the jury nonetheless would likely have believed the victim's trial testimony

that she was afraid of Tidwell, given that he displayed a knife, threatened to kill her, and told her

that he had a gun.  And given the strength of the prosecution's case, it was reasonable for the

state court to conclude that it was not reasonably probable that the outcome would have been

different had defense counsel attempted to impeach the victim.  Accordingly, Tidwell is not

entitled to relief on this claim.

   c.  *Failure to object to admission of handwritten notes on foundation grounds*

  Tidwell likewise claims that trial counsel was ineffective for failing to object to the

admission of handwritten notes under California Evidence Code §§ 356 and 1400-1402.  The

Superior Court also rejected this claim on habeas review, reasoning:

> Trial defense counsel did move to exclude the notes; based on the fact that some of the notes were missing from the notebook, in an in limine motion just before trial began, and the motion was denied.
>
> Regardless, Evid. Code § 356 is not an exclusionary provision; rather, it is a provision allowing an adverse party to request that the whole of a writing be introduced when only part of it is introduced by the other party.  Even if [Tidwell] is claiming, however, that counsel should have moved for the remainder of the writing  to be introduced, he fails to explain what was in the remainder that was reasonably likely to have made a difference in the outcome had it been introduced.  Nor does he show that the pages had ever been in existence by the time of trial; indeed, during the in limine motion, it was mentioned that the victim had removed pages from the notebook herself, implying that they no longer existed.  What remained was substantial, was incriminatory to [Tidwell], and had great probative value, and [Tidwell] does not claim that he remembered some other part of the notebook that was not there that could have shed a different light on what remained in existence.  As such, this part of the claim fails (*In re Bower* (1985) 38 Cal.3d 865).
>
> Evid. Code §§ 1400-1402 concern authentication of the writing.  [Tidwell] fails to show that the evidence was incompetent under these provisions.  He attaches a prosecution expert report, and claims that it failed to show that [Tidwell] was the person who wrote the notes; the report, however, states that there are indications that [Tidwell] did in fact execute the writing at the top of Q1, a 6" x 9" piece of notebook paper containing various writings.  And, it appears that [Tidwell's] handwriting as well as his fingerprints were identified at trial as being on the notebook pages.  Regardless, the victim testified that the notes were those written by her and [Tidwell] at the time of the crimes, which sufficiently authenticated the writings (see Evid. Code§ 1413).  As such, this part of the claim fails as well (*Bower, supra*).

Tidwell fails to show that the state court's rejection of this claim was unreasonable either. As the state court noted, California Evidence Code § 356 is not an exclusionary provision; rather, it enables an adverse party to request the entirety of a writing be introduced when an opposing party seeks to introduce a portion of it.  And as the state court also found, objecting under §§ 1400-1402 would have been futile because the writings were sufficiently authenticated by Tidwell's own handwriting and fingerprints, both of which were found on the challenged evidence, as well as the victim's testimony.  Thus, Tidwell cannot prevail on this ineffective assistance of counsel claim either.

    d.  *Failure to investigate DNA*

Tidwell further claims that his trial counsel was ineffective for failing to investigate the DNA evidence.  Tidwell contends that law enforcement tampered with the DNA evidence by "swabbing" the victim's underwear with a condom that contained his DNA.  The state courts summarily denied this claim on habeas review.

In this case, the record supports the finding that trial counsel made reasonable tactical decisions not to investigate Tidwell's allegations about police tampering.  Tidwell's defense was that he engaged in consensual sexual intercourse with the victim.  As such, the presence of his DNA on the victim's underwear was not harmful to his defense.  Moreover, Tidwell fails to demonstrate a reasonable probability of prejudice from counsel's failure to investigate.  Strong evidence other than the presence of Tidwell's DNA on the victim's underwear suggested that Tidwell had sexual intercourse with the victim, including the writings exchanged between Tidwell and the victim; the victim's statement to co-workers, the forensic nurse practitioner, and law enforcement shortly after the incident; and the victim's testimony at trial.  Accordingly,

Tidwell cannot establish that trial counsel was ineffective with respect to any of the asserted

claims, and he is not entitled to relief on these claims.

     3.       Appellate Counsel (Claim 5)

         a.     *Failure to investigate omission of portion of trial transcript*

Tidwell also alleges that appellate counsel rendered ineffective assistance by failing to

investigate Tidwell's claim that a portion of the trial transcripts was omitted.  On state habeas

review, the Superior Court addressed and rejected the claim as follows:

> [Tidwell] next claims a due process violation regarding missing transcripts for pages RT-329–RT-339, and ineffective assistance of appellate counsel in failing to investigate the omitted transcript.  [Tidwell] fails to attach a copy of the surrounding pages, but does admit that in place of the pages, the court reported inserted a single sheet stating that nothing was omitted; that on page RT-328 the transcript indicates that the court was then taking its evening recess on July 12, 2006, and that on page RT-340 cross-examination of the witness was resumed on the morning of July 13, 2006.  Regardless, inspection of the actual reporter's transcript shows that on pages 329-339, the reporter has typed the following: "Nothing omitted: Pages 330 through 339 for block numbering purposes only. * * *"  Page 328 shows the court announcing the evening recess·at the end of the day on July 12, 2006, and page·340 shows the beginning of the proceedings held the next morning on July 13, 2006.  As such, it appears that no transcript was ever in fact missing.
>
> Regardless, [Tidwell] appears to be claiming only that the missing transcript would have shown the victim's testimony that she consented out of fear.  That, however, would not have made a difference on his appeal; in fact, it would have supported the guilt findings, as a victim cannot "consent" to sexual conduct when the victim is acting out of fear, or at knifepoint as the victim had testified, which would be submitting to [Tidwell] as a result of both force and fear.  Penal Code §§ 289(a)(l) and 261(a)(2) require that the act be "accomplished against the victim's will by means of force, violence, duress, menace, or fear of immediate and unlawful bodily injury on the victim," and transcript showing testimony that [Tidwell] alleges would not have supported any claim on appeal that appellate counsel failed to raise.

As the state court noted, the record indicates no deficient performance on the part of

appellate counsel because there is no evidence that any trial testimony was omitted from the

Reporter's Transcript.  The transcript explicitly states that nothing is omitted and there is

continuity between the events at the end of page 328 and the beginning of 340.  Moreover, the

state court also reasonably determined that there was no reasonable probability of prejudice from

the alleged error.  According to Tidwell, the allegedly-omitted portion contained testimony from

the victim that she consented to sexual intercourse with Tidwell out of fear.  But as the state

court noted, such testimony would only have supported Tidwell's guilty verdicts by indicating

that the acts were committed against the victim's will out of "fear of immediate and unlawful

bodily injury."  *See* CAL PENAL CODE §§ 261(a)(2), 289(a)(1).  Tidwell therefore cannot prevail

on this ineffective assistance of counsel claim.

> b.      *Failure to investigate DNA evidence tampering*

Finally, Tidwell contends that appellate counsel was ineffective for failing to investigate

the DNA evidence.  The Superior Court also rejected this claim on habeas review, concluding:

> [Tidwell] next claims ineffective assistance of appellate counsel in failing to
> investigate [Tidwell's] suspicion that police had tampered with DNA evidence by
> removing it from a used condom found on the ground and swabbing it onto the victim's
> panties.  He admits that at trial, the victim testified that [Tidwell] had left the condom on
> the whole time and the prosecutor had admitted in closing argument that if [Tidwell] had
> left the condom on the whole time none of the semen would have been left in the victim's
> panties.  He claims that from this, it was logical to infer that the semen could not have
> been left on the panties as a result of the sexual assault, and that the rape exam at the
> hospital had found no semen on the victim or her panties, giving rise to an inference that
> the evidence had been tampered with.
>
> Appellate counsel, however, had no duty to investigate any matter outside the
> record.  Rather, appellate counsel was appointed solely to represent [Tidwell] on the
> appeal of the conviction, which is limited to raising issues apparent from the record.  As
> such, appellate counsel was not ineffective as claimed by [Tidwell].
>
> Nor does [Tidwell] otherwise state any viable claim.  [Tidwell] admits that from
> the evidence presented at trial, the jury could have inferred that the police had tampered
> with the semen and put it on the victim's panties.  As such, it is assumed that the jury did
> consider that possibility, and rejected it in deliberations or found that the remaining
> evidence was still sufficient to find guilt beyond a reasonable doubt.

Again, Tidwell fails to show that the state court's rejection of his claim is an objectively unreasonable application of *Strickland*. The state court reasonably determined that Tidwell's appellate counsel had no duty to investigate matters outside the record, which included Tidwell's police tampering accusation. Nor was it unreasonable for the state court to determine that there was no prejudice from the alleged error. The record supports the state court's assessment that, from the evidence presented at trial, the jury could have inferred that the police tampered with the evidence and either rejected the theory or believed it and still found sufficient evidence to convict Tidwell. Accordingly, Tidwell is not entitled to relief on any of his ineffective assistance of counsel claims.

## V. CONCLUSION AND ORDER

Tidwell is not entitled to relief on any ground raised in his Amended Petition.

**IT IS THEREFORE ORDERED THAT** the Amended Petition under 28 U.S.C. § 2254 for Writ of Habeas Corpus is **DENIED**.

**IT IS FURTHER ORDERED THAT** the Court declines to issue a Certificate of Appealability. *See* 28 U.S.C. § 2253(c); *Banks v. Dretke*, 540 U.S. 668, 705 (2004) ("To obtain a certificate of appealability, a prisoner must 'demonstrat[e] that jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further.'" (quoting *Miller-El*, 537 U.S. at 327)). Any further request for a Certificate of Appealability must be addressed to the Ninth Circuit Court of Appeals. *See* FED. R. APP. P. 22(b); 9TH CIR. R. 22-1.

The Clerk of the Court is to enter judgment accordingly.

Dated: January 6, 2015.

29

/s/James K. Singleton, Jr.
JAMES K. SINGLETON, JR.
Senior United States District Judge